**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| MITCHELL MARBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00925-CLS-JHE |
| | ) | |
| DEWAYNE ESTES, Warden III et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Mitchell Marbury filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 9). Marbury names the following defendants in the amended complaint: Captain Carla Graham, Warden DeWayne Estes, and Warden Cedric Specks.  (Doc. 9 at 2-3).  Marbury seeks compensatory and punitive damages.  (Doc. 9 at 5).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint (Doc. 9), Marbury's motion for leave to conduct additional discovery (Doc. 51), his motion for default judgment against Warden Specks (Doc. 55), and his cross-motion for summary judgment against Warden Specks (Doc. 61) were referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

For the following reasons, the undersigned recommends the court deny Marbury's motions for leave to conduct additional discovery, default judgment against Warden Specks, and cross-motion for summary judgment against Warden Specks.  (Docs. 51, 55, 61).  The undersigned further recommends the court grant the motions for summary judgment filed by the defendants and dismiss this action with prejudice.  (Docs. 35, 45 & 58).

## I. Procedural History

On September 30, 2020, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 20). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 20 at 8-9).

The defendants have filed special reports, supplemented by affidavits and/or other evidence. (Docs. 35, 45, 58). The undersigned notified the parties that the court would construe the special reports as motions for summary judgment and notified Marbury that he had 21 days to respond to the motions for summary judgment by filing affidavits or other material. (Docs. 47, 59). The undersigned also advised Marbury of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (Docs. 47, 59). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Marbury filed responses, a motion for leave to conduct additional discovery, a motion for default judgment against defendant Specks, and a cross-motion for summary judgment against defendant Specks. (Docs. 49-52, 55, 60-61). This matter is now ripe for review.

## II. Standard of Review

Because the court has construed the defendants' special reports as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023

(11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie

entitlement to summary judgment by showing the absence of genuine issues of material fact and

that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608

(11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is

able to show some evidence with respect to each element of his claim, all other issues of fact

become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th

Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a
> prima facie case. "In such a situation, there can be 'no genuine issue as to any
> material fact,' since a complete failure of proof concerning an essential element of
> the non-moving party's case necessarily renders all other facts immaterial."
> [citations omitted]. Thus, under such circumstances, the public official is entitled
> to judgment as a matter of law, because the plaintiff has failed to carry the burden
> of proof. This rule facilitates the dismissal of factually unsupported claims prior to
> trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be

considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d

1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).

Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally

than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se*

pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally

construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

In the present case, as already noted, the defendants have moved for summary judgment

and the plaintiff has filed a cross-motion for summary judgment against defendant Specks. "Where

both parties seek summary judgment as a matter of law, the court must consider each motion

independently and apply the applicable standards to each motion to determine whether summary

judgment is appropriate under either motion." *Matter of Lanting*, 198 B. R. 817, 820 (Bankr. N.D.

Ala. 1996). *See also, Nolen v. Paul Revere Life Ins.*, 32 F. Supp. 2d 211, 213 (E.D. Pa. 1998) (in

the case of cross-motions for summary judgment, each side must demonstrate the lack of genuine

issues of material fact and entitlement to judgment as a matter of law).

### III. Summary Judgment Facts

On September 7, 2017, prison officials temporarily transferred Marbury and other Holman

Correctional Facility ("Holman") inmates to the L-2 section of L/M Block at St. Clair Correctional

Facility ("St. Clair"). (Doc. 9 at 11; Doc. 45-1 at 2; Doc. 52 at 5). Only one side of L/M Block

housed inmates, all of whom were temporary transfers from Holman to St. Clair. (Doc. 52 at 5).

For reasons unknown to Marbury, the other three sides of the L/M Block were vacant. (Doc. 52

at 5). A few days after their arrival, Warden Specks informed the L/M Block inmates that they

would be monitored and escorted by security everywhere they went. (Doc. 52 at 5).

On October 19, 2017, Marbury told Warden Specks that he feared retaliation from

unknown inmates because he had been stabbed by an unknown inmate in 2016 while housed in

P/Q Block at St. Clair. (Doc. 9 at 11; Doc. 52 at 4). Marbury also informed Warden Specks that

inmates had reassigned themselves to L-2 cells without authorization and that such behavior sent

"a message to the St. Clair administration" that the inmates controlled the prison. (Doc. 9 at 12;

Doc. 52 at 4). Marbury asked Warden Specks to place him in segregation until his transfer back

to Holman. (Doc. 9 at 11). Warden Specks told Marbury "to go get a knife or pay the Crips,

I.G.D.," or "Blood game for some protection." (Doc. 9 at 11).[1] Marbury then made the same request of Captain Graham, whose investigation revealed "the guy who stabbed" Marbury in 2016 had been transferred to another facility. (Doc. 9 at 11; Doc. 45-1 at 2).

On November 22, 2017, Marbury directed a written complaint to Warden Estes about the matter. (Doc. 9 at 11; Doc. 52 at 6).[2] Marbury declares that he "made it known" in that complaint that he had witnessed over ten stabbings on G-Yard and several other stabbings in P/Q, N/O, and J/K Blocks, one of which resulted in an inmate's death. (Doc. 52 at 5). However, Marbury has submitted a copy of the written complaint and it does not contain this allegation. Instead, the complaint refers to: (1) Warden Specks' response to Marbury's request for segregation, (2) Marbury's 2016 stabbing,[3] and (3) a 2016 incident where an officer gave an inmate a knife to stab another inmate. (Doc. 52 at 6).

Marbury's written complaint to Warden Estes also does not inform Warden Estes that L-2 inmates never received the security escort promised by Warden Specks. (Doc. 52 at 5-6). The complaint to Warden Estes does allege that unassigned inmates were living in L-2 and "causing problems among those" assigned to the Block, and, that "[a]t times" the L-2 Block cubicle stayed unmanned for hours, which made him feel unsafe because "of all the rap[]ing, stabbing,

---

[1] Warden Specks has submitted a declaration disputing portions of Marbury's allegations. (Doc. 58-1). However, the declaration is unsigned, and therefore it will not be considered as evidence in support of Warden Specks' motion for summary judgment.

[2] Warden Estes, who is no longer an ADOC employee, declares he had the prison check Marbury's institutional file for correspondence to him but none was found. (Doc. 45-1 at 2).

[3] Marbury attests that "[r]ight before" his 2016 assault in P/Q Block an inmate in the cell next to him was raped at knifepoint by an inmate assigned to another prison block; this incident is not mentioned in his complaint to Estes. (Doc. 52 at 5).

e[x]tortion, and murdering" that had occurred at St. Clair over the previous 10 years. (Doc. 9 at 11; Doc. 52 at 6).

Around 5:20 a.m. on January 9, 2018, Marbury was looking out of his cell window with his cell door open when someone entered his cell. (Doc. 9 at 12; Doc. 35-2 at 5). As he turned to see who was entering his cell, someone hit him with a blunt object and knocked him unconscious. (Doc. 9 at 12; Doc. 35-2 at 5). Marbury could not identify the perpetrator because the assault happened so quickly. (Doc. 9 at 12).

Marbury declares that inmate Antonio Jones awakened him immediately before corrections officers entered the cell. (Doc. 9 at 12).[4] The security officers saw Jones trying to help Marbury and thought the two were fighting. (Doc. 9 at 12). After investigating the officers decided Antonio Jones had assaulted Marbury with a 20-pound dumbbell; Jones was placed in segregation. (Doc. 9 at 12).

Marbury was taken to the infirmary at 5:31 a.m., where an officer collected his bloody clothes as evidence and photographed his injuries. (Doc. 35-2 at 1-4). Nurse Marcano evaluated Marbury and directed his transport to the UAB Emergency Room for a possible orbital fracture. (Doc. 35-2 at 2, 5). A lieutenant reported the incident to Captain Graham, the on-call official. (Doc. 35-1; Doc. 35-2 at 1-2).[5] At 7:00 a.m. Nurse Reider evaluated inmate Jones, who stated he got hit with a stick. (Doc. 35-2 at 6). Nurse Reider noted redness to Jones' left posterior flank.

---

[4] According to the Incident and Duty Officer Reports concerning the event, at 5:20 a.m. Cubicle Officer Detrise Kelly saw Marbury exiting his cell in distress and with facial injuries. (Doc. 35-2 at 1-2). Officer Kelly also observed an unidentified inmate fleeing from the bottom of the stairs with blood filled clothing. (Doc. 35-2 at 1-2). Kelly called for assistance with a handheld radio and several roving officers responded to the dorm to assist Marbury. (Doc. 35-2 at 1-2). Marbury was taken to the infirmary and, after a thorough search of inmates, Antonio Jones was identified as the fleeing suspect. (Doc. 35-2 at 1-2).

[5] Captain Graham testifies she was not present at the time of the incident. (Doc. 35-1).

(Doc. 35-2 at 6).  Jones's bloody clothing and a 20-pound dumbbell were also collected as evidence.  (Doc. 9 at 12; Doc. 35-2 at 1, 6).

At UAB, Marbury underwent a CAT scan and remained hospitalized for three days.  (Doc. 9 at 12).  Upon his release, Marbury submitted a complaint to Warden Estes[6] and spoke to Warden Specks and Captain Graham.  (Doc. 9 at 12).  They refused to investigate and immediately placed him in segregation until his transfer back to Holman.  (Doc. 9 at 12).

### IV. Analysis

The defendants contend qualified immunity protects them from Marbury's failure to protect claims.  "'The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation omitted)).  Marbury does not dispute that the defendants were performing their discretionary duties at all times relevant to this case.  Therefore, the burden shifts to Marbury to show that the defendants violated a constitutional right and that the right was clearly established at the time of the alleged violation.  *Id*. (citation omitted).

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotation marks and citations omitted).  However, not every injury suffered by an inmate at the hands of another inmate

---

[6] Warden Estes attests he had the prison check Marbury's institutional file for correspondence to him but none was found.  (Doc. 45-1 at 2).

"translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). "'[T]o state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[7] A constitutional violation occurs only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, the known risk of injury must be a "'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989).

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

After a plaintiff establishes that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Marbury claims the defendants were subjectively aware of the general threat of inmate-on-inmate violence at St. Clair because of constant violence at the facility and the lack of security provided for him as an L2 Block inmate. For the reasons that follow, Marbury has "failed to produce evidence that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm." *Marbury*, 936 F.3d at 1233, 1235.

Marbury points to "all the rap[]ing, stabbing, e[x]tortion, and murdering" that occurred at St. Clair in the ten years prior to his August 2017 transfer. (Doc. 9 at 11; Doc. 52 at 5-6). Marbury also declares that between September 7, 2017, and January 9, 2018, he witnessed over ten stabbings on the facility's G-Yard and several other stabbings in P/Q, N/O, and J/K Blocks. (Doc. 9 at 11; Doc. 52 at 5-6). The evidence material to this claim, however, are the conditions of St. Clair's L/M Block, where Marbury was housed and where the 2018 assault occurred. That evidence demonstrates Marbury and all other Holman transfer inmates were segregated from St. Clair inmates in L/M Block behind locked doors. The only allegation Marbury has presented

9

concerning L/M Block is that "inmates" moved into L-2 Block cells without authorization and "caus[ed] problems." (Doc. 52 at 5). This allegation is unsupported by any specific facts.

As to security, Marbury does not dispute that in 2017 his only validated enemy was housed at Staton, not St. Clair. Marbury's complaint that the Holman transfer inmates never received a security escort promised by Warden Specks is irrelevant to his claim because the 2018 assault occurred within L/M Block. (Doc. 52 at 5-6). And while Marbury states the L-2 Block cubicle sometimes stayed unmanned for hours, the undisputed record demonstrates that Officer Detrise Kelly was in the cubicle when his January 9, 2018 assault occurred. (Doc. 9 at 12; Doc. 35-2 at 1). Upon witnessing Marbury exiting his cell in distress and an inmate with blood-soaked clothes fleeing from the bottom of the stairs, Kelly immediately called for assistance. (Doc. 35-2 at 1).

For the foregoing reasons, Marbury has not met his burden to show defendants Specks, Graham, and Estes violated a constitutional right because he has not demonstrated a genuine factual issue as to whether the defendants were deliberately indifferent to a substantial risk of harm to him. Accordingly, the motion for summary judgment filed by defendants Graham, Specks, and Estes is due to be granted and the cross-motion for summary judgment filed by Marbury against defendant Specks is due to be denied.

### V. Additional Motions

**A. Motion for Default Judgment (Doc. 55)**

On October 27, 2021, Marbury filed a motion for default judgment on the grounds that counsel had accepted service of process on defendant Specks' behalf but had failed to file a response to the amended complaint. (Doc. 55). However, the August 17, 2021, notice to which Marbury refers states that Assistant Attorney General Benjamin Albritton had obtained

10

authorization to accept service on Specks' behalf and that counsel would file a response to Marbury's complaint "[o]nce service has been completed."  (Doc. 54).

On October 28, 2021, the undersigned directed the Clerk to serve a copy of the Order for Special Report and amended complaint to Assistant Attorney General Albritton, and ordered counsel for Specks to file a waiver of service and special report within 14 days.  (Doc 56).  Specks filed a timely waiver of service and special report.  (Docs. 57, 58).  Accordingly, Marbury's motion for default judgment is due to be denied.[8]

### B. Motion for Leave to Conduct Additional Discovery (Doc. 51)

On July 7, 2021, Marbury filed a document titled, "Motion to Amend Motion for Additional Discovery Federal Rule of Civil Procedure 56(f)," which in content, is a motion for leave to conduct additional discovery.  (Doc. 51).[9]  Marbury declares the Special Report does not include the following requested information:

> (1) all incident reports concerning inmate-on-inmate assaults involving the use of weapons;

---

[8] Marbury's motion for default judgment is also ineffective because he improperly bypassed the necessary precondition of a clerk's entry of default by proceeding directly to a request for the court to enter a default judgment.  The law is clear that these are separate steps that cannot be combined into one. *See, e.g., Ramada Franchise Sys., Inc. v. Baroda Enters., LLC*, 220 F.R.D. 303, 304 (N.D. Ohio 2004) ("An entry of default and a default judgment are distinct events that require separate treatment.").  "First, the party seeking a default judgment must file [an application pursuant to Rule 55(a) & (b)(1), Fed. R. Civ. P.] for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, second, once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party [pursuant to Rule 55(b)(2)]." *UMG Recordings, Inc. v. Stewart*, 461 F.Supp.2d 837, 840 (S.D. Ill. 2006); *Sun v. United States*, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004) (finding motion for default judgment to be premature where plaintiff had failed to obtain entry of default, a prerequisite to a default judgment).

[9] On the same date, Marbury filed a "Request for Production and Inspection of Documents" pursuant to Rule 34 of the Federal Rules of Civil Procedure.  (Doc. 50).  His request demands the defendants produce or allow inspection of a number of documents.  As previously discussed, the Order for Special Report expressly instructed the parties that, other than initial disclosures, no additional discovery would be allowed absent leave of court.

(2) all incident reports concerning inmate-on-officer assaults from 2010-2018;

(3) all incident reports concerning inmate-on-inmate assaults with the use of weapons that resulted in injury or death at St. Clair from 2010-2018;

(4) the names of all inmates who suffered injury or death as a result of inmate-on-inmate assaults with the use of weapons from 2010-2018;

(5) all employee complaints regarding security hazards within St. Clair from 2010-2018;

(6) a copy of all administrative policies regarding security at St. Clair.

(Doc. 51 at 1).

This court "has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014). In cases involving qualified immunity of public officials, such as this action, this court must "exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Harbert Int'l Inc.*, 157 F.3d at 1280 (holding that in a qualified immunity case, "balancing is done with a thumb on the side of the scale weighing against discovery"). Marbury's requests for discovery are overbroad and will not "present facts essential to" opposing the motion for summary judgment. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 (11th Cir. 2013). Even if the information has some relevance, Marbury has not demonstrated how denial of his request would result in "substantial harm" to his case. *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014) (internal citation omitted).

Accordingly, Marbury's motion for leave to conduct additional discovery is due to be denied.

## VI. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court deny Marbury's motion for leave to conduct additional discovery and motion for default judgment against Specks (Docs. 51, 55). The undersigned **FURTHER RECOMMENDS** the court grant the motions for summary judgment filed by the defendants (Docs. 35, 45 & 58) and **DISMISS** the action against them **WITH PREJUDICE**. Finally, the undersigned **RECOMMENDS** the court **DENY** Marbury's cross-motion for summary judgment against defendant Specks. (Doc. 61).

## VII. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or

modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 27th day of January, 2022.

 

 

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE